(a) If a public building is unavailable for use as the polling place for a county election precinct, the commissioners court may purchase or construct a building in the precinct for that purpose.

(b) The commissioners court may permit a building purchased or constructed under Subsection (a) to be used with or without charge for purposes other than as a polling place.

**Effective: [See Text Amendments]**

**§ 43.033. Consideration for Use of Public Building as Polling Place**

(a) No charge, including a charge for personnel, utilities, or other expenses incurred before or after regular business hours, may be made for the use of a public building for a polling place if the day of the election is a day on which the building is normally open for business. If the day of the election is a day on which the building is not normally open for business, a charge may be made only for reimbursement for the actual expenses resulting from use of the building in the election.

(b) The reimbursing authority is entitled to an itemized statement of expenses before making remittance.

(c) A person commits an offense if the person assesses a charge for the use of a public building for a polling place in violation of Subsection (a). An offense under this subsection is a Class C misdemeanor.

**Effective: [See Text Amendments]**

**§ 43.034. Accessibility of Polling Place to the Elderly and Persons with Physical Disabilities**

(a) Each polling place shall be accessible to and usable by the elderly and persons with physical disabilities. To be considered accessible, a polling place must meet the standards established under Article 9102, Revised Statutes, including the following standards:

(1) the polling place must be on the ground-level floor or be accessible from the ground-level floor by an elevator with doors that provide an opening of at least 36 inches in width;

(2) doors, entrances, and exits used to enter or leave the polling place must have a minimum width of 32 inches;

(3) any curb adjacent to the main entrance to a polling place must have curb cuts or temporary nonslip ramps;

(4) any stairs necessary to enter or leave the polling place must have a handrail on each side of the stairs and a nonslip ramp; and

(5) the polling place may not have a barrier that impedes the path of a person with physical disabilities to the voting station.

(b) The commissioners court shall provide a polling place that complies with Subsection (a) in each county election precinct. The site shall be made available for use as a polling place on every day that an election may be held within the precinct by any authority that holds elections. The commissioners court may make expenditures from either the general fund or the permanent improvement fund to bring an existing county-owned site into compliance with Subsection (a).

(c) The governing body of each political subdivision that holds elections shall cooperate with the commissioners court in its respective county in implementing this section and is subject to the same requirements for compliance

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

as prescribed by Subsection (b). If the authority holding an election rejects a county-designated polling place that is available and chooses to use a different site of its own designation, it shall provide a polling place that complies with Subsection (a) at its own expense. A political party that is holding a primary election may not reject an available county-designated polling place without the prior consent of the secretary of state.

**Effective: September 01, 2005**

**Subchapter C. Information Regarding Location of Polling Place**

**§ 43.061. Notice of Change of Location of Polling Place**

(a) This section applies only to a general or special election that is ordered by the governor or the county judge.

(b) If the location of a polling place changes after notice of an election is given under Section 4.003, the county clerk shall give notice of the change not later than the earlier of:

(1) 24 hours after the location is changed; or

(2) 72 hours before the polls open on election day.

(c) Notice required by Subsection (b) must be given by:

(1) notifying each candidate whose name appears on the ballot in the election or, in the case of an office filled by voters of more than one county, notifying the county chair or, for an independent candidate, the county judge of the county in which the change occurs; or

(2) posting the notice in a listing used specifically to inform the public of changes to the location of a polling place on any Internet website that the county clerk maintains to provide information on elections held in the county.

**Effective: September 01, 2001**

**§ 43.062. Notice at Previous Polling Place**

If the location of the polling place for an election precinct is different from the location used for the precinct in the preceding election ordered by the same authority, the authority responsible for giving notice of the election shall, if possible, post notice at the entrance to the previous polling place stating that the location has changed and providing the location of the new polling place.

**Effective: September 01, 2001**

**§ 43.063. Use of Computerized Information**

In an election in which detailed poll location information is available at a polling place through a computer, an election officer shall provide that information to assist voters in determining the correct polling place location for the voter's election precinct.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 6

Current through the end of the 2006 3rd Called Session of the 79th Legislature.
END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB IV

## IV.
## OPERATIVE DATES FOR ADOPTION AND IMPLEMENTATION

Gonzales County is required by the Texas Election Code to provide for election precincts and polling places.  These matters were submitted for preclearance in September of 2001, and were precleared in DOJ#:2001-3168 on or about November 20, 2001. (See Tab VIII.)

This submission seeks preclearance and formal recognition of a relocation of the previously precleared polling place for Voting Box (Election Precinct) #2 from the American Legion Building, at 1620 Robertson Street, Gonzales, Texas to the Emmanuel Fellowship, 1817 St. Lawrence Street, Gonzales, Texas, both prospectively for all future elections and retroactively for the elections held in 2006, i.e. the Primary Election held March 7, 2006; the Runoff Election held April 11, 2006; and the General Election held November 7, 2006.

By formal Order adopted January 8, 2007, the Commissioners Court of Gonzales County, Texas make this application pursuant to state law, and in conformity with the Voting Rights Act of 1964.

_**NOTICE:  In compliance with Section 5 of the Voting Rights Act, implementation of the proposed change of political boundaries shall not occur until receipt of pre-clearance from the United States Department of Justice.**_

# TAB V

## V.
## REASONS FOR CHANGE

Any change in voting methods, policies or procedures triggers application of the Voting Rights Act and a Section 5 pre-clearance submission. Therefore, this submission seeks to pre-clear all prior elections and all future elections held in Election Precinct (Voting Box) #2 in Gonzales County, Texas to be relocated from the American Legion Building to the Emmanuel Fellowship Hall. In this regard, Gonzales County would show as follows in support of this requested preclearance.

Gonzales County seeks to provide a consistent polling location for all future elections. Due to a change in operational management of former polling place at the American Legion Building, the availability of that location had become uncertain and problematic. See Tab V, Exhibit N, attached hereto and incorporated herein by reference.

As a result, shortly before the March 7, 2006 primary, election officials learned that the use of the American Legion Building had been denied, and a new polling place had to be located. The Emmanuel Fellowship is located within the boundaries of Election Precinct 2, and is only a short distance (one mile) from the American Legion Building. See Maps under Tab II, Exhibits G and H.

The American Legion Building was unavailable for all three elections, and it is unlikely to be available for any future election. See affidavit of Mr. Henry Condel, the manager/operator of the American Legion Building, attached hereto and incorporated herein as Exhibit N, under Tab V.

# TAB N

### AFFIDAVIT OF HENRY CONDEL

STATE OF TEXAS             §
                           §     KNOW ALL BY THESE PRESENTS:
COUNTY OF GONZALES         §

BEFORE ME, the undersigned authority, on this date personally appeared Henry Condel, who upon his oath stated as follows:

"My name is Henry Condel. I am in excess of eighteen years of age, of sound mind, and competent to make this affidavit. I have personal knowledge of the matters stated in this affidavit, and all such matters are, to my personal knowledge, true and correct.

I am the manager/operator of the American Legion Building located at 1620 Robinson Street, Gonzales, Texas. I assume this position approximately four years ago. During my tenure as manager, the American Legion has operated a restaurant in the portion of the building that had previously been used as a polling place. The use of the premises as a polling place would be disruptive to the business operating in the building.

In approximately early February of 2006, I was called by an individual I know as Lynn Wilson. Mr. Wilson is the presiding judge of election precinct or voting box 2 in Gonzales. He asked me if the building would be available for use as a polling place. No one had contacted me any earlier, and I told Mr. Wilson that the building was already booked for the date he was interested in, March 7, 2006.

I believe the last election that was held in the American Legion building was in 2004, but even at that time, I expressed the opinion that holding an election was disruptive to my business, since it effectively closes the restaurant for the full day. In 2006, there were three elections that could have closed my business if I had allowed the building to be used as a polling place.

On April 11, 2006 and November 7, 2006, the building I managed was already booked for use as a restaurant. I was unable to allow the use of the building as a polling place on these dates.

My decision to deny use of the American Legion Building as a polling place was not designed to harm anyone, but merely to better serve my business, and the customers that I serve.

_Henry Condel_
Henry Condel

SUBSCRIBED AND SWORN before me, the undersigned authority, to certify which witness my hand and seal of office.

MARY ANN HOBIZAL
NOTARY PUBLIC
STATE OF TEXAS
My Commission Expires 10-31-2008

_Mary Ann Hobizal_
Notary Public, State of Texas
Printed Name:
Commission Expires:

**Affidavit**
**Of**
**Henry Condel**

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| | § | KNOW ALL BY THESE PRESENTS: |
| COUNTY OF GONZALES | § | |

BEFORE ME, the undersigned authority, on this date personally appeared Henry Condel, who upon his oath stated as follows:

"My name is Henry Condel. I am in excess of eighteen years of age, of sound mind, and competent to make this affidavit. I have personal knowledge of the matters stated in this affidavit, and all such matters are, to my personal knowledge, true and correct.

I am the manager/operator of the American Legion Building located at 1620 Robertson Street, Gonzales, Texas. I assume this position approximately four years ago. During my tenure as manager, the American Legion has operated a restaurant in the portion of the building that had previously been used as a polling place. The use of the premises as a polling place would be disruptive to the business operating in the building.

In approximately early February of 2006, I was called by an individual I know as Lynn Wilson. Mr. Wilson is the presiding judge of election precinct or voting box 2 in Gonzales. He asked me if the building would be available for use as a polling place. No one had contacted me any earlier, and I told Mr. Wilson that the building was already booked for the date he was interested in, March 7, 2006.

I believe the last election that was held in the American Legion building was in 2004, but even at that time, I expressed the opinion that holding an election was disruptive to my business,

since it effectively closes the restaurant for the full day. In 2006, there were three elections that could have closed my business if I had allowed the building to be used as a polling place.

On April 11, 2006 and November 7, 2006, the building I managed was already booked for use as a restaurant. I was unable to allow the use of the building as a polling place on these dates.

My decision to deny use of the American Legion Building as a polling place was not designed to harm anyone, but merely to better serve my business, and the customers that I serve.


_____
Henry Condel

SUBSCRIBED AND SWORN before me, the undersigned authority, to certify which witness my hand and seal of office.


_____
Notary Public, State of Texas
Printed Name:
Commission Expires:

# TAB VI

## VI.
## ANTICIPATED EFFECT OF CHANGE ON RACIAL,
## ETHNIC OR LANGUAGE MINORITIES

The proposed change, from a demographic analysis, would have little or no effect upon minority voting rights under normal circumstances because the requested change does not alter the presently existing minority percentages of the existing voting box, which are similar to the minority demographics that existed under the prior voting scheme.

It is recognized, however, that in the context of the present request for retroactive preclearance, particularly following an election in which a minority candidate was defeated by an Anglo write in candidate, allegations of racial bias will be made and must be addressed by the Department of Justice.

However, a careful examination of the demographics of the pre-cleared boundaries, as well as those of the prior voting scheme, together with voter turnout patterns will reveal the following:

1.  Minority candidates had some potential for electoral success, but no previously demonstrated history of electoral success.

2.  The minority population of Election Precinct #2 favored a Hispanic, rather than Black candidate.

3.  Mr. Grant, the unsuccessful candidate in the November General Election, was elected in the primary by a single vote, 293-292.  See Newspaper articles under Tab VI, Exhibit O.

4.  Analysis of the votes cast indicates that turnout was heavy, suggesting that both candidates had worked the entire Commissioners Court precinct hard.

5.  Analysis of the margin of loss suggests that Mr. Grant would have lost the election without regard to the question of an un-precleared polling place.

6.  The polling place used in the General Election had been used in the two prior elections, and had been well publicized prior to the election.  (See evidence of public notice of polling place prior to General Election, and notice of polling place to be used in the General Election by the Democratic Party web-site.  See Tab VI, Exhibit P.

# TAB O



Gonzales Weather 5° Forecast

**Want your ad placed here?**
**Give us a call at 830-672-2861**

Make Us Your Homepage

## NEWS SECTIONS

Front Page
News
Sports
Opinion
Letters to the Editor
Obituaries
Classifieds
Archives

## SERVICES

Submit a Letter
Community Links
Calendar
Place a Classified
Subscribe
About Us
Contact Us

## ONLINE SECTIONS

AP News
Financial News
Health News
Entertainment
Town Hall

OPINION POLL


Photo
Order reprints here!


LOTTO TEXAS

## SEARCH CLASSIFIEDS

go!

## SEARCH ARCHIVES

go!

# The Gonzales Inquirer

Serving Gonzales County, Texas and the surrounding area since 1853

## Early voting begins Oct. 23 for Nov. 7 General Election

The Nov. 7 election is fast approaching and Gonzales County Clerk Lee Riedel says early voting is less than two weeks away.

Riedel said last week that early voting will begin Oct. 23 and continue through Nov. 3.

This year's ballot will feature only a handful of contested races on both the state and county level, including the only local race for Precinct 2 county commissioner.

In that race, Democratic primary winner Russell Grant will face a challenge from write-in candidate Donnie Brzozowski.

Brzozowski opted to enter the race after Grant defeated incumbent James D. Kelso in the March 7 Democratic Primary by the slimmest of margins, 293-292, after a recount.

By state law, write-in candidates can qualify to run even after a primary is held and that is what left the door open for Brzozowski.

There were two other contested races on the March ballot.

Eugenio Melchor defeated incumbent Olen Malaer Jr. in the Precinct 3 justice of the peace race and Don Setliff won a three-candidate race for the Precinct 4 JOP seat.

Riedel said her office is currently taking applications for ballots by mail and will continue to take them through Oct. 31.

Through last week, the clerk's office had mailed out 230 ballots, which included two to overseas citizens of the county, 13 to overseas military and 12 to military stationed stateside.

She said all but one of the military applications are from the 2004 election since the requests are good for two elections with federal offices on them.

Call
830-672-2861
today to
reserve this
ad space!


Gonzales
Healthcare
Systems
(830) 672-7581

Call
830-672-2861
today to
reserve this
ad space!

**QUALITY**
CHEVROLET-DODGE
Everybody
Rides Today
The Quality Way!
830-672-8626
Click here to view vehicles

On the national level, local voters will be asked to choose between a four-candidate slate for U.S. representative in District 25.

Democrat Lloyd Doggett will face Libertarian Barbara Cunningham, Republican Grant Rostig and Independent Brian Parrett in this special election.

The special election is being held because the boundaries for the district were changed by orders from federal courts in August.

On the state level, the most notable will come in the race for the governor's office where incumbent Rick Perry will face Democrat Chris Bell, Libertarian James Warner and independents Richard "Kinky" Friedman and Carole Keeton Strayhorn.

Locally, early voting will be held at the Gonzales Courthouse Annex at 1709 Sarah DeWitt Dr., city hall in Nixon and city hall in Waelder between the hours of 8 a.m. and 5 p.m. Monday through Friday

Copyright © 2006 The Gonzales Inquirer. All rights reserved.

**Phone:830-672-2861 – E-Mail:** news@gonzalesinquirer.com

**Front Page** | **News** | **Sports** | **Opinion** | **Letters to the Editor**
| **Obituaries** | **Classifieds** | **Archives** | **Submit a Letter** |
**Community Links** | **Place a Classified** | **Subscribe** | **About Us**
| **Contact Us**
**Calendar** | **AP News** | **Finance** | **Health** | **Entertainment** |
**Town Hall**

http://www.gonzalesinquirer.com/articles/2006/10/09/news/news02.txt                    12/30/2006

# TAB P




# The Gonzales County Democratic Party

1712 Sarah Dewitt Drive, Gonzales. Texas 78629
Phone: 1-830-672-6542 democrat@gvec.net

## Polling Places By Precinct Number

Precinct Number 1 ...........................Courthouse, 414 St. Joseph St., Gonzales

Precinct Number 2 ...Emmanuel Fellowship, 1817 St Lawrence St., Gonzales

Precinct Number 3 ........................City Building, 820 St. Joseph St., Gonzales

Precinct Number 4 ................................City Building, 100 W. 3rd St., Nixon

Precinct Number 5 ...............Community Center, Highway 90 West, Belmont

Precinct Number 6 ....Livestock Commission Co.,1924 US Hwy 87 E., Nixon

Precinct Number 7 ...........................Texas Elks Foundation, FM 1586 Ottine

Precinct Number 8 ............................Harwood Community Center, Harwood

Precinct Number 9 .................................City Building, Highway 90, Waelder

Precinct Number 10 ........................Community Center, 401 Billings, Smiley

Precinct Number 11 ........................... Peach Valley Camp, CR 357, Dilworth

Precinct Number 12 ....Riverside Center, Water St. & St Lawrence. Gonzales

Precinct Number 13 ...Oak Valley Baptist Church, 6242 Hwy 97 W, Gonzales

Precinct Number 14 ........................Community Center, FM 2067, Cheapside

Precinct Number 15 .......GVTC Co-op Building. FM 466 & St Hwy 97, Cost

# TAB VII

**VII.**
**PAST OR PENDING LITIGATION AFFECTING VOTING RIGHTS**

Gonzales County has not been the subject of prior litigation affecting voting rights, but is currently being sued by an unsuccessful candidate for office in the General Election, and two minority citizens of Election Precinct 2. This litigation, Cause No. SA06CA1099, styled *Russell Grant, Lawrence W. Fryer and Leslie Hastings, Plaintiffs v. Gonzales County, Texas, Defendant*, has been filed in the Western District of Texas, San Antonio Division.

A copy of the pleadings filed by Russell Grant, Lawrence W. Fryer and Leslie Hastings is attached under this Tab and incorporated herein by reference.

# MAX RENEA HICKS

ATTORNEY AT LAW

1250 Norwood Tower
114 West 7th Street
Austin, Texas 78701

December 15, 2006

(512) 480-8231
Fax: (512) 480-9105
rhicks@renea-hicks.com

Robert B. Scheske, County Attorney
Gonzales County
514 St. Paul Street
Gonzales, Texas 78629

*by* first class mail

Re:   *Grant v. Gonzales County*, Civ. Action No. SA-06-CA-1099-FB;
In the U.S.D.C., West. Dist. of Texas, S.A. Div'n

Dear Mr. Scheske:

Enclosed are the following matters in the above-referenced case:

■ Plaintiffs' Original Complaint;
■ Request for Convening of Three-Judge Court;
■ Application for Preliminary Injunction, Supporting Memorandum of Law, and Request for Expedited Hearing;
■ Proposed Order and
■ Notice of Lawsuit and Request for Waiver of Service of Summons.

I faxed this same material to you this afternoon. I also called and left you a message, but your assistant indicated that you were out of the office until Monday.

I would appreciate the opportunity to talk with you about the issues in this lawsuit and, so, would ask that you call me when you have a chance. I look forward to speaking with you.

Sincerely,

Max Renea Hicks

encl.

*Board Certified CIVIL APPELLATE LAW - Texas Board of Legal Specialization*

RECEIVED
DEC 1 4 2006
U.S. DIST. COURT
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

RUSSELL GRANT, LAWRENCE
W. FRYER, and LESLIE HASTINGS,
*Plaintiffs*,

vs.

GONZALES COUNTY, TEXAS,
*Defendant*.

§
§
§
§
§
§
§
§
§

**SA06CA1099 FB**

Civil Action No. _____

## PLAINTIFFS' ORIGINAL COMPLAINT

The Plaintiffs complain here of the actions of Defendant Gonzales County, Texas, in its conduct of the general election completed on November 7, 2006.  The grounds follow.

**Preliminary statement**

1.      Despite the requirements of Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c Gonzales County changed the Election Day polling place for Election Precinct No. 2 (the county election precinct with the largest concentration of registered African-American voters) without seeking or obtaining advance preclearance for the change from either the United States Department of Justice or a United States District Court for the District of Columbia,.  The Plaintiffs seek: (a) a declaration that the Election Precinct 2 polling place change is legally ineffective unless and until precleared (either administratively or judicially); and  (b) an injunction requiring the County to submit the polling place change expeditiously for preclearance.  The Plaintiffs further seek preliminary injunctive relief that prohibits the candidate elected to Gonzales County Commissioner Place 2 in the election concluded on November 7, 2006, from taking office until and unless the challenged polling place change receives clearance under

Section 5 of the Voting Rights Act of 1965, as amended. Further, in the event that the polling place change is denied clearance under Section 5 of the Voting Rights Act, the Plaintiffs seek an injunction, requiring the County to conduct a new general election for the position of Gonzales County Commissioner Place 2 for the term that was supposed to begin on January 1, 2007.

**Parties**

2.    Plaintiff Russell Grant is a resident of Gonzales County, Texas. He is a registered voter in Gonzales County Election Precinct No. 2 and was so registered at the time of the general election concluding on November 7, 2006. He is African-American.

3.    Plaintiff Lawrence W. Fryer is a resident of Gonzales County, Texas. He is a registered voter in Gonzales County Election Precinct No. 2 and was so registered at the time of the general election concluding on November 7, 2006. He is African-American.

4.    Plaintiff Leslie Hastings is a resident of Gonzales County, Texas. He is a registered voter in Gonzales County Election Precinct No. 2 and was so registered at the time of the general election concluding on November 7, 2006. He is African-American.

5.    Defendant Gonzales County, Texas (sometimes, "County"), is a political subdivision of the State of Texas. It may be served with process through its County Judge, David Bird, 414 St. Joseph Street, Suite 200, Gonzales, Texas 78629.

**Venue**

6.    Venue is proper in this district and division under 28 U.S.C, §§ 124(d)(4) and 1391(b).

2

## Jurisdiction and three-judge court

7.    The Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 2201, and 2202 and 42 U.S.C. §§ 1973c and 1973j(f).  Under 28 U.S.C. § 2284 and 42 U.S.C. § 1973c(a), a three-judge court must be convened to sit as a district court to hear and determine this action.

## Factual allegations

8.    Russell Grant, an elected, current member of the city council of the City of Gonzales, was a candidate for Place 2 on the Gonzales County Commissioners Court for the four-year term that commences on January 1, 2007.  If elected, he would be the first African-American member of the Gonzales County Commissioners Court in the modern era.

9.    Grant won the Democratic Party primary in March, 2006, defeating the Anglo incumbent in County Commissioner Place 2.  The Republican Party did not nominate any candidate to run for that position in the November, 2006, general election.

10.    At some point after the party primaries, an active write-in campaign for the County Commissioner Place 2 position began on behalf of Donnie R. Brzozowski. Brzozowski is Anglo; he identified himself as an Independent in the course of his write-in campaign.

11.    Brzozowski defeated Grant in the general election.  The final results were announced, and the winner declared, on November 28, 2006, following a recount. Brzozowski won by 145 votes.

12.    County Commissioner Place 2 contains three county election precincts (Nos. 2, 9, and 11). One of these county election precincts, election precinct No. 2, has the highest concentration of registered African-American voters in Gonzales County.

13.    The final results of the general election for the County Commissioner Place 2 seat are tabulated below, broken down by election precinct, with separate early voting and election day totals:

### Early voting ballots

| Precinct # | R. Grant | D. Brzozowski | total |
|---|---|---|---|
| 2 | 246 | 277 | 523 |
| 9 | 120 | 148 | 268 |
| 11 | 12 | 47 | 59 |
| total | 378 | 472 | 850 |

### Election day ballots

| Precinct # | R. Grant | D. Brzozowski | total |
|---|---|---|---|
| 2 | 110 | 143 | 253 |
| 9 | 96 | 88 | 184 |
| 11 | 11 | 37 | 48 |
| total | 217 | 268 | 485 |

As indicated in the table, a total of 253 votes were cast in election precinct 2 for Grant and Brzozowski, combined, on election day, with Brzozowski receiving 33 more votes.

14.    For at least a quarter century before this past November general election day in Gonzales County, the general election day polling place for precinct 2 had been the American Legion hall at 1612 North Robertson Street. Robertson Street is one of the principal streets in the principal predominantly African-American neighborhood in the City of Gonzales, and voters in the African-American community had become quite familiar with the hall over the years as the place to go to vote on general election day.

4

15.    For *this* general election day, however, the County changed the polling place for precinct 2. It moved the polling place from the long-familiar American Legion hall to the Emmanuel Fellowship and School, located at 817 Saint Lawrence Street in the City of Gonzales. The location of this private elementary and secondary school is at the extreme southeast edge of the predominantly African-American community and neighborhood and is not along a regular and familiar thoroughfare for voters and residents from that community.

16.    The County instituted this polling place change quietly, with little fanfare or notice, on or about September 22, 2006. That is the day that it first notified the Texas Secretary of State of its planned polling place switch.    The explanation given the Secretary of State's for the switch was that "we have had scheduling problems here before." A few days later, the County indicated that the relocation of the precinct 2 polling place was "due to conflict of use of American Legion Hall."

17.    The State of Texas and all its political subdivisions became subject to the preclearance requirements of Section 5 of the Voting Rights Act on November 1, 1972. They still are subject to its requirements.

18.    The switch of the polling place for election precinct 2 for the general election of November 7, 2006, is a change in electoral practices and procedures that is subject to the preclearance requirements of Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c. As a result of that statute, the change of the precinct 2 polling place from the American Legion Hall to Emmanuel Fellowship and School could not be legally effective until and unless the change was submitted to either the United States Department of Justice ("DOJ") or a United States District Court for the District of

Columbia for an advance determination, prior to use of the new polling place, whether the County had established that the switch did not have either the purpose or the effect of denying or abridging the right to vote on account of race. In short, the location of polling places are covered under the preclearance requirements of Section 5 of the Voting Rights Act, and, as a matter of federal law, any change in them cannot take effect until and unless preclearance (either administrative or judicial) is obtained.

19.    The County has never initiated a request for either administrative or judicial preclearance of the change in polling place for election precinct 2 for the November 7th general election day.  That is, it has not made a submission to DOJ, requesting preclearance of the change, and it has not filed an action for declaratory judgment in federal district court in Washington, D.C., seeking preclearance of the change.  Hence, the County's use of the Emmanuel Fellowship and School as the November 7th election day polling place for county election precinct 2 was, and remains today, illegal and without effect.

**Legal claim: Violation of Section 5 of the Voting Rights Act of 1965, as amended**

20.    Based upon the foregoing factual allegations, the County violated, and remains in violation of, 42 U.S.C. § 1973c in the designation and use of the Emmanuel Fellowship and School as the November 7th election day polling place for county election precinct 2.

**Request for relief**

21.    In light of the foregoing matters, Plaintiffs Grant, Fryer, and Hastings urge the Court to grant the following relief:

a.    a preliminary injunction, requiring the County to submit the polling place change for county election precinct 2 for preclearance under 42 U.S.C. §

1973c, either to DOJ or through the filing of declaratory judgment action in the United States District Court for the District of Columbia, within thirty days;

b.    a preliminary injunction, prohibiting the County from permitting the candidate declared under state law the winner of the election for Gonzales County Commissioner Place 2 to take office until and unless the County both seeks and obtains preclearance under 42 U.S.C. § 1973c of the polling place change it has instituted for county election precinct 2;

c.    a permanent injunction, prohibiting the polling place change the County has instituted for county election precinct 2 from having any effect in the event that preclearance is denied under 42 U.S.C. § 1973c;

d.    a permanent injunction, requiring a new election for County Commissioner Place 2 for the term beginning January 1, 2007, in the event that preclearance is denied under 42 U.S.C. § 1973c;

e.    an award of attorney fees to Plaintiffs under 42 U.S.C. § 1973l(e); and

f.    an award of court costs.

Respectfully submitted,

Max Renea Hicks
Attorney at Law
State Bar No. 09580400

1250 Norwood Tower
114 West 7th Street
Austin, Texas 78701
(512) 480-8231
fax: (512) 480-9105
e-mail: rhicks@renea-hicks.com

ATTORNEY FOR PLAINTIFFS GRANT, FRYER, AND HASTINGS

7

RECEIVED
DEC 14 2006
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

RUSSELL GRANT, LAWRENCE
W. FRYER, and LESLIE HASTINGS,
*Plaintiffs,*

§
§
§   **SA06CA1099**  **FB**
§
§   Civil Action No. _____
§

vs.

GONZALES COUNTY, TEXAS,
*Defendant.*

§
§
§
§

## REQUEST FOR CONVENING OF THREE-JUDGE DISTRICT COURT

Plaintiffs Grant, Fryer, and Hastings have filed this day Plaintiffs' Original Complaint.* Their claim is that Defendant Gonzales County has sought to administer a change in election procedures – in the form of a change in polling places for a county election precinct for the general election day of November 7, 2006 – without seeking and obtaining the required preclearance of such a change as required by 42 U.S.C. § 1973c.

Under 42 U.S.C. § 1973c(a), claims that an electoral change is covered by 42 U.S.C. § 1973c, and that § 1973c has been violated, are to be determined by a three-judge district court. *See, e.g., Allen v. State Board of Elections,* 393 U.S. 544, 563 (1969); *Sumter County Democratic Executive Comm. v. Dearman,* 514 F.2d 1168, 1170 (5th Cir. 1975). The procedures governing designation of such a three-judge court are set out in 28 U.S.C. § 2284.

Therefore, Plaintiffs request that a three-judge court be convened to determine their claim, including their request for a preliminary injunction.

---

* The plaintiffs anticipate filing an Application for Preliminary Injunction on December 15, 2006, seeking the relief requested in ¶¶ 21.a and 21.b of Plaintiffs' Original Complaint. Only time and travel constraints have prevented the Application being filed on the same day as the Original Complaint and this Request for Convening of Three-Judge District Court.

Respectfully submitted,

Max Renea Hicks
Attorney at Law
State Bar No. 09580400

1250 Norwood Tower
114 West 7th Street
Austin, Texas 78701
(512) 480-8231
fax: (512) 480-9105
e-mail: rhicks@renea-hicks.com

ATTORNEY FOR PLAINTIFFS GRANT,
FRYER, AND HASTINGS

2

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RUSSELL GRANT, LAWRENCE | § | |
| W. FRYER, and LESLIE HASTINGS, | § | |
| *Plaintiffs*, | § | |
| | § | Civil Action No. SA-06-CA-1099-FB |
| vs. | § | *(three-judge court requested)* |
| | § | |
| GONZALES COUNTY, TEXAS, | § | |
| *Defendant*. | § | |

## APPLICATION FOR PRELIMINARY INJUNCTION, SUPPORTING MEMORANDUM OF LAW, AND REQUEST FOR EXPEDITED HEARING

Plaintiffs Grant, Fryer, and Hastings filed Plaintiffs' Original Complaint on December 14, 2006. Their claim is that the polling place change that Gonzales County instituted for County Election Precinct No. 2 for voting on Election Day, November 7, 2006, violates Section 5 of the Voting Rights Act because it was not either administratively or judicially precleared as required under that provision.

The plaintiffs here seek an expedited hearing, before January 1, 2007, on their application for a preliminary injunction.

### I.    THE PRELIMINARY INJUNCTIVE RELIEF THAT IS REQUESTED

The plaintiffs apply for a preliminary injunction to ensure that the County's illegal polling place change not be given any legal effect until the County seeks, and the proper forum (either the United States Department of Justice or a United States District Court for the District of Columbia) clears, the challenged polling place change. To that end, the plaintiffs ask the Court to issue a preliminary injunction before January 1, 2007, that:

(i) requires the County to submit the polling place change for County Election Precinct No. 2 for preclearance under 42 U.S.C. § 1973c within 30 days of the Court ordering it do so; and

(ii) prohibits the County from permitting the candidate declared the winner under state law of the general election for Gonzales County Commissioner Place 2 to take office for the term beginning January 1, 2007, unless and until the County seeks and obtains preclearance under 42 U.S.C. § 1973c of the polling place change for County Election Precinct No. 2.

II.   **THE ONLY ISSUES BEFORE THE COURT ARE WHETHER THE POLLING PLACE CHANGE IS COVERED UNDER SECTION 5, WHETHER THE POLLING PLACE CHANGE HAS, IN FACT, BEEN PRECLEARED, AND, IF NOT, WHAT RELIEF IS APPROPRIATE.**

Private parties may bring injunctive lawsuits such as this one to force a governmental entity to follow the preclearance requirements established by Section 5 of the Voting Rights Act. *See, e.g., Allen v. State Board of Elections*, 393 U.S. 544, 554-555 (1969). In such suits, the usual four-part test for determining whether to grant preliminary injunctive relief is inapplicable. *See, e.g., United States v. Louisiana*, 952 F.Supp. 1151, 1159-1160 (W.D. La.), *aff'd*, 521 U.S. 1101 (1997).

Instead, for Section 5 injunction suits such as this one, there are only three issues to decide:

(i)     whether the challenged change is covered by § 5;

(ii)    if it is covered, whether § 5's approval requirements have been satisfied; and

(iii)   if the requirements have not been satisfied, what remedy is appropriate.

*City of Lockhart v. United States*, 460 U.S. 125, 129 n.3 (1983); *see also McCain v. Lybrand*, 465 U.S. 236, 250 n.17 (1984) (same). Whether the challenged change had a discriminatory purpose or effect is not at issue in these Section 5 injunction cases. *City of Lockhart*, 460 U.S. at 129 n.3; *McCain*, 465 U.S. at 250 n.17. The latter set of issues is to be determined in administrative or judicial forums in the District of Columbia. *Id.*

2

III.    **POLLING PLACE CHANGES ARE COVERED CHANGES UNDER SECTION 5.**

Section 5 is designed to address "the protean strategies of racial discrimination." *Dougherty County Board of Education v. White*, 439 U.S. 32, 37 n.6 (1978).    The basic Section 5 coverage question is whether the change at issue has the "potential" for discrimination. *Id.*, 439 U.S. at 36.

It already is definitively settled that a change in polling places is a covered change under Section 5 requiring preclearance.  *See Perkins v. Matthews*, 400 U.S. 379, 387 (1971) (changed location of polling place is a covered change).  The Section 5 Guidelines promulgated by DOJ establish the same principle:  "Changes affecting voting include ... [a]ny change in ... the location of polling places."  28 C.F.R. § 51.13(d) (*DOJ Procedures for the Administration of Section 5 of the Voting Rights Act of 1965, as amended*).

Thus, the answer to the first of the three questions before the Court is that the polling place change that Gonzales County made is a covered change, subject to the preclearance requirements of Section 5.

IV.    **GONZALES COUNTY HAS NOT SUBMITTED THE CHALLENGED POLLING PLACE CHANGE FOR PRECLEARANCE, AND THE CHALLENGED POLLING PLACE CHANGE HAS NOT BEEN PRECLEARED.**

The next question is whether the specific covered change at issue, in fact, has been precleared, either administratively by DOJ and judicially by a District of Columbia federal court.  The County has not even submitted the challenged polling place change for preclearance.  A review of the docket of the United States District Court for the District of Columbia reflects that there is no declaratory judgment action either pending or decided by the court there involving Gonzales County's change of polling location for County Election Precinct No. 2.  Similarly, a review of the on-line catalogue of Section 5

3

submissions for administrative preclearance, maintained by DOJ, reflects no submission of the County's polling place change.[1]

Without a submission, there cannot have been preclearance – and, on top of that, none of the reliable sources reflect preclearance of Gonzales County's polling place change in any event.  Hence, the answer to the second question is that the change of polling location for Gonzales County Election Precinct No. 2 has not been precleared under Section 5.

V.    THE APPROPRIATE REMEDY FOR THE COUNTY'S SECTION 5 VIOLATION IS TO ORDER IT TO EXPEDITE ITS EFFORT TO OBTAIN APPROVAL OF THE TO-DATE ILLEGAL POLLING PLACE CHANGE, MAINTAIN THE PRE-ELECTION STATUS QUO FOR PLACE 2 ON THE COMMISSIONERS COURT IN THE INTERIM, AND DEFER ANY DETERMINATION ON THE NEED FOR A NEW PLACE 2 ELECTION UNTIL AFTER THE SECTION 5 APPROVAL DETERMINATION IS MADE.

A.    The governing rule is that district courts are to enjoin implementation of a covered, but unprecleared, change under Section 5.

The failure to preclear a covered change "invalidates" the change and leaves it to the three-judge district court in the forum state to fashion appropriate relief. *McCain*, 465 U.S. at 257.  The Supreme Court has more recently explained:

> No new voting practice is enforceable unless the covered jurisdiction has succeeded in obtaining preclearance. ... If a voting change subject to § 5 has not been precleared, § 5 plaintiffs are entitled to an injunction prohibiting implementation of the change.

*Lopez v. Monterey County*, 519 U.S. 9, 20 (1996).

Thus, the basic rule applicable in this case is that the plaintiffs are entitled to an injunction prohibiting implementation of the Precinct 2 polling place change that

---

[1] *See* http://www.usdoj.gov/crt/voting/notices/noticepg.html (last visited December 15, 2006).  Under Federal Rule of Evidence 201(b), the Court may take judicial notice of these two sources – that is, the docket of the federal court in the District of Columbia and DOJ's "Notices of Section 5 activity under the Voting Rights Act of 1965, as amended."

4

occurred for Election Day, November 7, 2006. After all, "[a] voting change ... will not be effective as la[w] until ... cleared." *Clark v. Roemer*, 500 U.S. 646, 652 (1991).

**B.**  **"Retroactive preclearance" efforts, necessitated here by the County's illegal polling place change, require interim remedies that expedite the preclearance process and maintain the pre-election status quo while awaiting the preclearance decision.**

This basic rule, of course, has to be adjusted to fit the situation present in this case, in which implementation in violation of Section 5 already has happened.[2]  The Supreme Court has expressly addressed how this adjustment is to be made.

    *1.*  *Under Berry v. Doles, the Court should order the County to expedite its submission of the covered, but unprecleared change.*

In *Berry v. Doles*, 438 U.S. 190 (1978), the Court was faced with a Section 5 violation following from a covered, unprecleared change that already had been implemented in an election. Rejecting a request that such a situation *automatically* invalidated the election, the Court set up a two-step approach to remedy in this context, following its own previous suggestion that "it might be appropriate to enter an order affording local officials a opportunity to seek federal approval and ordering a new election only if local officials fail to do so or if the required federal approval is not forthcoming." 438 U.S. at 192, quoting *Perkins v. Matthews*, 400 U.S. at 396-97. The Court then ordered that Section 5 scrutiny be satisfied "without further delay" by giving the local officials in that case 30 days to apply for Section 5 preclearance. 438 U.S. at 192-93. It concluded by explaining that the dispute would be over if Section 5 approval happened, but, if § approval was not sought or was denied, the plaintiff could renew their

---

[2] One court has termed this situation "retroactive preclearance." *East Flatbush Election Committee v. Cuomo*, 643 F.Supp. 260, 264 (E.D.N.Y. 1986).